UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LAURA PENDERGEST-HOLT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> THOMAS V. SJOBLOM and PROSKAUER ROSE, L.L.P. <br><br> Defendants. | CAUSE NO. _____ <br><br><br> JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Laura Pendergest-Holt this Original Complaint against Defendants, Thomas Sjoblom and his law firm, Proskauer Rose, L.L.P., and for causes of action pleads as follows:

### PARTIES

1. Plaintiff, Laura Pendergest-Holt, is a citizen of the State of Mississippi.

2. Defendant, Thomas V. Sjoblom (hereinafter "Sjoblom"), is an attorney and partner with Proskauer Rose, L.L.P., an international law firm. Defendant Sjoblom practices out of Proskauer Rose's Washington, D.C. and New York offices. Defendant may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Sjoblom engages in business in Texas but does not maintain a regular place of business in this state or a designated agent for service of process, and this suit arose out of Sjoblom's business in Texas. The Texas Secretary of State may serve Sjoblom at 1001 Pennsylvania Avenue, NW Suite 400 South Washington, DC 20004-2533.

3. Defendant, Proskauer Rose, L.L.P. (hereinafter "Proskauer"), is an international law firm, with offices in, among other places, Washington, D.C. and New York. This Defendant

Pendergest-Holt v. Sjoblom et al                                Doc. 1

Dockets.Justia.com

may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because Proskauer engages in business in Texas but does not maintain a regular place of business in this state or a designated agent for service of process, and this suit arose out of Proskauer's business in Texas. The Texas Secretary of State may serve Proskauer at 1001 Pennsylvania Avenue, NW Suite 400 South, Washington, DC 20004-2533.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case in that Defendants are citizens of Washington D.C. and New York, and Plaintiff is a citizen of Mississippi. Further, the amount in controversy exceeds $75,000.00, exclusive of interest and costs; thus, there is diversity jurisdiction in this matter. This Court has personal jurisdiction over Defendants because they do business in the State of Texas, and the actions complained of herein arise from and relate to Defendants contacts with the State of Texas. Further, venue is proper in this Court because the actions complained of herein occurred in this District and Division.

## FACTUAL BACKGROUND

5. This is a legal malpractice dispute against Defendant, Thomas Sjoblom, and his law firm, Proskauer Rose, L.L.P. Defendants' legal malpractice resulted in the Plaintiff being arrested on February 26, 2009, and ultimately being charged in a Felony Complaint with Obstruction of a Proceeding before an Agency of the United States, the Securities and Exchange Commission ("SEC"). As a direct and proximate result of Defendants' malpractice, Plaintiff has been wrongfully accused of a crime, is incurring and will continue to incur, at least if not more, hundreds of thousands of dollars in attorneys' fees and other related damages, and has had all of her real and personal property seized by the SEC. Plaintiff is completely and absolutely innocent of the charges which have been filed against her.

6. Plaintiff's arrest followed the seizure of the assets of Stanford International Bank, Ltd., Stanford Capital Management, LLC, Stanford Financial Group Company and the Stanford Group Company (collectively, "the Stanford Group"), among other entities, on February 17, 2009, by the SEC.

7. The United States Government's criminal complaint against Plaintiff is based on, and arises out of, sworn testimony that Plaintiff that occurred on February 10, 2009, before the SEC. Prior to her sworn testimony, Plaintiff met in Dallas on multiple occasions with Defendant Sjoblom to prepare her. Defendant Sjoblom also accompanied Plaintiff to her sworn testimon on February 10, 2009, before the SEC.

8. Based on her meetings with Defendant Sjoblom, and based specifically on the representations he made to her prior to her recorded testimony before the SEC on February 10, 2009, Plaintiff reasonably and actually believed that Defendants were her assisting her as her lawyers, were representing her interests, and were protecting her interests. In short, based on the action of Defendants, Plaintiff believed Defendants were representing her interests as her attorneys in her individual capacity. Instead, the Defendants acted not in the best interest of Plaintiff but were, instead, acting in the "best interests" of Allen Stanford and the Stanford Companies and Defendants. Indeed, unbeknownst to Plaintiff, the night before Sjoblom met with Plaintiff to allegedly prepare her for her testimony before the SEC, Sjoblom had solicited a multi-million dollar retainer from Stanford to represent Stanford personally.

9. For almost three hours prior to the actual start of her sworn recorded testimony, Plaintiff spoke to the SEC. Throughout these discussions, Plaintiff reasonably believed that Defendants were representing her, in her individual capacity. At some point during Plaintiff's sworn testimony, Defendant Sjoblom checked with his office and learned that his retainer

agreement called for him to represent the Stanford Group and its related companies, as well as the Stanford Group's officers and directors—but not Plaintiff in her individual capacity. At no time did Defendants advise Plaintiff (a) that Defendants were not actually representing Plaintiff's personal interests in the testimony, or, more importantly, the significance of that fact; (b) that Plaintiff instead needed to retain and receive advice from her own individual counsel prior to the oral testimony or meeting with the SEC; (c) that Plaintiff had a 5th Amendment Right against self-incrimination; (d) that Plaintiff had the option of not appearing at the proceeding and not speaking with the SEC; (e) that there were potential criminal penalties associated with providing sworn oral testimony to the SEC; (f) that given the potential criminal penalties associated with the SEC testimony, that Plaintiff could choose not to appear and testify, and that she should not do so; (g) that the interests of her employer were adverse to Plaintiff's interests; (h) that Defendants' interests in representing the Stanford Group and its officers and directors were different from Plaintiff's personal interests; and (i) that there was no attorney-client privilege for communications by and between Plaintiff and Defendants. Defendants also failed to fully and adequately prepare Plaintiff for her testimony by again, not properly explaining to her that representation of her individual interests was vastly different from representation of her as an officer of one of the entities in the Stanford Group. Prior to the sworn testimony, Defendant also failed to provide Plaintiff with documents to refresh her recollection about the expected subjects of the SEC inquiry. Further, it is obvious now that Defendants' actions were a clear attempt to protect other principals within the Stanford Group, to the detriment of Plaintiff's interests.

10. Further, during the sworn oral testimony, Defendant Sjoblom gave contradictory answers about whether, as an attorney, he represented Plaintiff by stating: "I represent the

company Stanford Financial Group and affiliated companies," while contradicting that very statement, by also informing Plaintiff and the SEC, on the record, as follows:

> Q. Just so we're clear. As I understand your statement, you do not as far as you're concerned, represent the witness here today?
>
> A. ***I represent her*** insofar as she is an Officer or director of one of the Stanford affiliated companies.

11. By Defendants' conduct, actions and words, Defendants caused Plaintiff – a non-lawyer – to actually and reasonably believe that Defendants as attorneys represented her interests prior to and during the oral testimony before the SEC, and that communications by and between Plaintiff and Defendants were privileged, and protected by the attorney-client privilege.

12. In a memorandum prepared and distributed by Defendant Proskauer entitled *The Fifth Amendment and Immunity in Securities and Exchange Commission Investigations*, Proskauer states that [t]he obvious advantage of invoking the privilege is that the witness avoids incriminating himself." In addition, the memorandum cites many commentators and courts for the idea that "in situations where it is likely that an enforcement proceeding will ultimately be commenced, the advantages of not testifying outweigh the advantages of testifying." Of course, this information was never provided to the Plaintiff.

13. On January 16, 2008, Defendant Sjoblom himself prepared and presented a seminar in New York City entitled *Parallel Proceedings in Securities Cases* which included a *Primer* on how to respond in parallel proceedings brought by the SEC and various Self-Regulatory Organizations. Again, none of this information was provided to Plaintiff.

14. Given the potential consequences, and the divergent interests by and between Plaintiff and Defendants, Defendants had an obligation to inform Plaintiff that Defendants could not adequately represent Plaintiff, that Plaintiff required her own separate counsel, that Defendants could not represent her in preparing for her oral testimony, that Defendants could not

adequately prepare her for her oral testimony, and that Defendants could not attend or represent her at the SEC proceeding.

## **FIRST CLAIM FOR RELIEF**

### (Legal Malpractice and Professional Negligence)

15. Plaintiff incorporates herein by reference each and every allegation set forth above as if fully set forth herein.

16. Due to their conduct which created an attorney-client relationship with Plaintiff in her individual capacity, Defendants owed Plaintiff a professional duty of care to act and behave in a manner consistent with, and in satisfaction of, the professional standard of care appropriate to counsel in similar circumstances, dealing with persons in similar circumstances as Plaintiff.

17. Defendants breached their professional standard of care to Plaintiff by, among other things, failing to advise Plaintiff (a) that Defendants were not actually representing Plaintiff's individual interests in the proceeding; (b) that Plaintiff needed to retain and meet with her own counsel prior to the proceeding; (c) that Plaintiff had a 5th Amendment Right against self-incrimination; (d) that Plaintiff could decide not to appear at the proceeding; (e) that there were potential criminal penalties associated with testifying before the SEC; (f) that given the potential criminal penalties associated with the SEC proceeding, that Plaintiff should not appear and testify at the proceeding; (g) that the interests of the Stanford Group were adverse to Plaintiff's interests; (h) that Defendants' interests were divergent from Plaintiff's interests; (i) that Defendants had a conflict of interest in representing her at her oral testimony; and (j) that there was no attorney-client privilege for communications by and between Plaintiff and Defendants. Defendants also did not fully and adequately prepare Plaintiff for her oral testimony.

18. As a direct and proximate result of Defendants' breach of their professional duties of care to Plaintiff, Plaintiff has been damaged in an amount to be proven at trial. Because

Defendants acted with gross negligence, bad faith, or malice, Plaintiff also seeks an award of punitive damages.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

19. Plaintiff incorporates herein by reference each and every allegation set forth above as if fully set forth herein.

20. By virtue of their conduct prior to and during a portion of Plaintiff's recorded testimony, Defendants created an attorney-client relationship with Plaintiff in both her individual capacity, as well as her corporate capacity as one of the officers or directors of one of the entities within the Stanford Group. This attorney-client relationship was not only implied by Defendants' actions, it was expressed by Defendants in the various meetings with Plaintiff. Defendants thus owed a fiduciary duty to Plaintiff. This duty in the State of Texas includes, among others, the duty of loyalty, the duty to act in good faith, the duty to avoid conflicts, and the duty to disclose all potentially prejudicial material facts.

21. Defendants breached this fiduciary duty by attempting, at least initially, to represent Plaintiff's personal interests as well as the interests of her employer and its related entities. When Defendants learned that they were not authorized to represent Plaintiff in her individual capacity and could not adequately do so, they then took no action to protect her interests even though the attorney-client relationship with her in her individual capacity was already established. This was a glaring conflict of interest. Rather than stopping the recorded testimony, formally withdrawing from the representation of her in her individual capacity, advising her of the necessity of the retention of another attorney, and allowing her the ability to do so, they instead continued, and hung her out to dry. A false criminal complaint resulted.

22. Defendants' breaches of their fiduciary duty to Plaintiff proximately caused her damage. Because these breaches occurred in bad faith, due to a conflict of interest, that necessarily is evidenced by Defendants placing their personal interests in representing the Stanford Group over the interests of the Plaintiff, the award of punitive damages is appropriate.

## **CONDITIONS PRECEDENT**

23. Plaintiff has satisfied all conditions precedent to filing this lawsuit.

## **JURY DEMAND**

Plaintiff respectfully requests a jury on all claims and causes of action properly triable before a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For damages in an amount to be proven at trial, but which damages are estimated to exceed twenty million dollars ($20,000,000.00);

2. Punitive Damages;

3. Disgorgement; and

4. For such other and further relief as is deemed appropriate by the Court.

Respectfully submitted,

## THE BUZBEE LAW FIRM

By:    */S/ Anthony G. Buzbee*
     Anthony G. Buzbee
     State Bar No. 24001820
     S.D. ID No. 22679
     Sean E. O'Rourke
     State Bar No. 24046547
     S.D. ID No. 685220
     J.P. Morgan Chase Tower
     600 Travis, Suite 7300
     Houston, Texas 77002
     Telephone: (713) 223-5393
     Facsimile: (713) 223-5909
www.txattorneys.com

**ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL:**

Erik A. Christiansen *(pro hac)*
Brent R. Baker *(pro hac)*
**PARSONS BEHLE & LATIMER**
One Utah Center
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, Utah 84145-0898
801) 532-1234 Telephone
(801) 536-6111 Facsimile